Filed 4/3/14 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE,** | **A137796** |
| **Plaintiff and Respondent,** | |
| **v.** | **(Del Norte County**<br>**(Super. Ct. No. CRF129128)** |
| **MICHAEL CLARENCE WAXLER,** | **ORDER MODIFYING OPINION**<br>**[NO CHANGE IN JUDGMENT]** |
| **Defendant and Appellant.** | |
| _____/ | |

THE COURT:

It is ordered that the opinion filed herein on March 11, 2014, be modified as follows:

1. On page 3, first full paragraph, delete the second sentence beginning "Deputy Griffin was," and the third sentence beginning "He remembers he" and insert the following sentences:

Deputy Griffin was not sure exactly when he became aware of the 215 card, but he learned about it after he began searching appellant's truck. When asked when he became aware of the 215 card, he testified, "my recollection is [appellant] told me on scene. And I confirmed it at the jail when I actually looked at it after I arrested him for the methamphetamine issue." When defense counsel asked Deputy Griffin whether he had a "recollection if [he] learned about the 215 [card] prior to the search of the vehicle or after the search of the vehicle," Deputy Griffin responded, "My technical search began when I entered the vehicle to retrieve the marijuana pipe. So I didn't learn about it then. I don't know how long it was after that or not" and said he "saw the pipe first before . . . doing any questioning."

1

There is no change in the judgment.

The petition for rehearing is denied.

Dated _____                    _____, P.J.

Superior Court of Del Norte County, No. CRF129128, William H. Follett, Judge.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, René A. Chacón, Supervising Deputy Attorney General, and Bruce Ortega, Deputy Attorney General, for Plaintiff and Respondent.

A137796

3

Filed 3/11/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE



**THE PEOPLE,**

　　**Plaintiff and Respondent,**　　　　　　　　**A137796**

　　**v.**　　　　　　　　　　　　　　　　　　**(Del Norte County**
　　　　　　　　　　　　　　　　　　　　　　**Super. Ct. No. CRF129128)**


**MICHAEL CLARENCE WAXLER,**

　　**Defendant and Appellant.**
_____/


　　　　The question in this case is whether the odor of burnt marijuana emanating from a vehicle and the observation of burnt marijuana in a pipe inside the vehicle create probable cause to search that vehicle pursuant to the automobile exception to the warrant requirement. The answer is yes, notwithstanding the fact that possession of not more than 28.5 grams (an ounce) "of marijuana, other than concentrated cannabis, is . . . an infraction" punishable by a fine. (Health & Saf. Code, § 11357, subd. (b).)[1] Under the

---

[1]　　Unless otherwise noted, all further statutory references are to the Health and Safety Code. Effective 2011, a person who possesses "not more than 28.5 grams of marijuana . . . is guilty of an infraction punishable by a fine of not more than $100." (§ 11357, subd. (b), as amended by Stats. 2010, ch. 708, § 1.) "California has chosen to treat the offense of possession of less than 28.5 grams of marijuana as a minor offense that is nonjailable even for repeat offenders." (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1037 (*Hua*).) An infraction, however, is still a "crime" under Penal Code section 16.

1

automobile exception to the warrant requirement, a law enforcement officer may search a vehicle when he or she has probable cause to believe it contains contraband or evidence of a crime. (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1225 (*Robey*).) Under the current state of California law, nonmedical marijuana — even in amounts within the statutory limit set forth in section 11357, subdivision (b) — is "contraband" and may provide probable cause to search a vehicle under the automobile exception. Moreover, possession of a "215 card" does not vitiate probable cause to search pursuant to the automobile exception. (*People v. Strasburg* (2007) 148 Cal.App.4th 1052 (*Strasburg*).)[2]

We affirm the trial court's denial of appellant Michael Waxler's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

We have taken the facts from the preliminary hearing transcript.

*The Incident*

In February 2012, Del Norte County Sheriff's Deputy Richard Griffin learned a person was illegally dumping trash in a parking lot behind a Crescent City Safeway. Deputy Griffin drove to the Safeway and stopped next to appellant's truck. Appellant was sitting in the driver's seat. As Deputy Griffin "got close" to appellant's truck, he smelled "the odor of burnt marijuana" and "saw a marijuana pipe with . . . what appeared to be burnt marijuana in the bowl." The pipe was "on the bench seat right next to" appellant. Deputy Griffin searched the truck and found a methamphetamine pipe and a small bindle containing suspected methamphetamine with a street value of about $50.

Deputy Griffin's partner detained appellant and "Mirandized"[3] him. Appellant initially said he knew the methamphetamine and methamphetamine pipe were in his vehicle. He claimed the methamphetamine "was not his" and had been left in the truck

---

[2] A "215 card" refers to the government card issued under the Compassionate Use Act of 1996 (CUA), also known as Proposition 215. (§ 11362.5, subd. (a).) The Medical Marijuana Program Act (MMPA) enacted in 2003 created a voluntary medical marijuana identification card program. (See *Strasburg*, *supra,* 148 Cal.App.4th at p. 1057 [describing CUA and MMPA].)

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

by some friends, who were hitchhikers. Then he "changed his story a couple of times." Later, appellant said the methamphetamine "had been in his truck for a few days because he'd picked up the hitchhiker . . . upstate" and "later he changed his story again to say he'd received this meth from the hitchhiker in payment for the ride."

At some point during the conversation, appellant told Deputy Griffin he "had a 215 card" and showed it to him. Deputy Griffin was not sure exactly when he became aware of the 215 card, but he learned about it after he searched appellant's truck. He remembers he looked at the card after arresting appellant "for the methamphetamine issue." As Deputy Griffin explained, "Even if he has a valid medical marijuana card I still have to confirm how much he has on him or if there are other issues with it. [H]e can have a valid card and have half a gram present in a pipe. I've seen many times people hide a quarter ounce or more . . . . So I still have to confirm how much marijuana is inside the vehicle. From my training and experience it's still an arrestable offense. [ ] I have to determine whether it's legally possessed or not."

*The Charges, Motion to Suppress, and Plea*

The People charged appellant with transportation of methamphetamine (§ 11379 (Count 1)) and with possession of methamphetamine (§ 11377 (Count 2)). Appellant moved to suppress, claiming Deputy Griffin "did not have any reason to believe" appellant was "under the influence of marijuana or any other drug, . . . attempting to operate a vehicle while under the influence of marijuana, or . . . committing any crime at the time that would warrant a search of the vehicle."

According to appellant, the amount of "completely un-smoked marijuana . . . in the bowl" was a "miniscule" 0.3 grams and "was well below the personal limits that are allowed by law." Appellant claimed Deputy Griffin's observation of marijuana in the truck "could not have supported an arrest" because possession of up to 28.5 grams of marijuana is an infraction under section 11357. Finally, appellant argued the possession of "personal use medical marijuana" was legal with a doctor's recommendation. The suppression motion attached a valid physician's statement recommending the use of

3

marijuana for medical conditions (§ 11362.5) and a valid Washington State medical marijuana card.

In opposition, the People argued Deputy Griffin had probable cause to search appellant's truck after observing "an odor of marijuana." They also contended the CUA "does not provide immunity from arrest or criminal prosecution" and that possession of a 215 card is "an affirmative defense to the crimes of possession and cultivation of marijuana at trial" and does "not protect one from a valid search nor arrest." The parties stipulated appellant had a valid 215 card on the day of the incident.

At the conclusion of the preliminary hearing, the court denied appellant's motion to suppress and held him to answer the charges. The court explained, "I think the possession of the 215 card is an affirmative defense. The observation of marijuana is sufficient to justify the officer's investigating further. It's up to the defendant at that point to say, . . . I've got a 215 card. And once that's brought to [the law enforcement officer's] attention I think [the officer] has no further justification. But in the absence of an affirmative defense being asserted at that time I think he has a right to proceed as he did."

Appellant pled guilty to possession of methamphetamine (§ 11377 (Count 2)). The court dismissed the methamphetamine transportation charge (§ 11379 (Count 1)) and reduced the methamphetamine possession conviction to a misdemeanor (Pen. Code, § 17, subd. (b)). The court suspended imposition of sentence and placed appellant on probation.

DISCUSSION

I.

*Standard of Review*

"The denial of the suppression motion may be challenged by an appeal from the judgment entered after defendant's guilty or no contest plea. [Citations.] ' "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure

4

was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" [Citations.]' " (*People v. Leath* (2013) 217 Cal.App.4th 344, 350.)

## II.
### *The Automobile Exception to the Warrant Requirement*

"[T]he Fourth Amendment to the United States Constitution permits the warrantless search of an automobile with probable cause." (*Strasburg, supra,* 148 Cal.App.4th at p. 1059.) Under the automobile exception to the warrant requirement, "[w]hen the police have probable cause to believe an automobile contains contraband or evidence they may search the automobile and the containers within it without a warrant. [Citation.]" (*People v. Superior Court (Nasmeh)* (2007) 151 Cal.App.4th 85, 100 (*Nasmeh*); *Ornelas v. United States* (1996) 517 U.S. 690, 696 [probable cause to search exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found"].)

"The ' "specifically established and well-delineated" ' [citation] automobile exception to the Fourth Amendment's warrant requirement is rooted in the historical distinctions between the search of an automobile or other conveyance and the search of a dwelling. [Citation.]" (*Nasmeh, supra,* 151 Cal.App.4th at p. 100.) The automobile exception is also "rooted in the reduced expectation of privacy in a vehicle [and] the fact a vehicle is inherently mobile." (*People v. Evans* (2011) 200 Cal.App.4th 735, 753; *California v. Carney* (1985) 471 U.S. 386, 394 (*Carney*) [vehicle's inherent mobility]; *Arizona v. Gant* (2009) 556 U.S. 332, 345 [reduced expectation of privacy in an automobile].) Under the automobile exception, " ' "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." ' [Citation.]" (*Nasmeh, supra,* 151 Cal.App.4th at pp. 100-101; *People v. Diaz* (2013) 213 Cal.App.4th 743, 754.)

5

III.
*The Odor of Marijuana and the Observation of Burnt Marijuana Inside a Vehicle Provide Probable Cause to Search Pursuant to the Automobile Exception*

California courts have concluded the odor of unburned marijuana or the observation of fresh marijuana may furnish probable cause to search a vehicle under the automobile exception to the warrant requirement. (*People v. Gale* (1973) 9 Cal.3d 788, 794, superseded by statute on another ground in *People v. Johnson* (1984) 162 Cal.App.3d 1003, 1008 ["strong odor of fresh marijuana" gave the officer " 'probable cause to believe . . . that contraband may be present' "]; *People v. Cook* (1975) 13 Cal.3d 663, 667-669, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 [scent of marijuana emanating from a car's trunk provided probable cause to a search under the automobile exception to the warrant requirement]; *Strasburg*, *supra,* 148 Cal.App.4th at p. 1060; *People v. Dey* (2000) 84 Cal.App.4th 1318, 1320 (*Dey*) [observation of a "useable quantity of marijuana . . . in the passenger compartment" of the defendant's car "provided probable cause for the search of the vehicle's trunk"]; *People v. Hunter* (2005) 133 Cal.App.4th 371, 375 (*Hunter*) [officer saw a "sandwich bag containing a green residue that his training and experience told him . . . was marijuana"]; *Robey, supra,* 56 Cal.4th 1218, 1254 (conc. opn. of Liu, J.) [noting the "settled proposition that the smell of marijuana can establish probable cause to search and, in the context of an automobile search . . . , can provide a sufficient basis to proceed without a warrant"]; see also *People v. Fitzpatrick* (1970) 3 Cal.App.3d 824, 826-827 [probable cause to arrest the defendant who smelled of burned marijuana during a traffic stop].)

Appellant concedes the odor of marijuana justifies the warrantless search of an automobile under *Strasburg*. In that case, a division of this court concluded a police officer had probable cause to search the defendant's car when the officer smelled marijuana immediately after the defendant opened the driver's side door. (*Strasburg, supra,* 148 Cal.App.4th at pp. 1058-1059.) As the *Strasburg* court explained, the officer

6

"had probable cause to search defendant's car for marijuana after he smelled the odor of marijuana. [Citations.] Defendant admitted smoking marijuana, and the deputy sheriff saw another bag of marijuana in the car after the defendant handed him one. Armed with the knowledge that there was marijuana in the car, 'a person of ordinary caution would conscientiously entertain a strong suspicion that even if defendant makes only personal use of the marijuana found in [the passenger area], he might stash additional quantities for future use in other parts of the vehicle . . . .' [Citation.]" (*Id.* at p. 1059.)

The *Strasburg* court rejected the defendant's claim that the officer could not "detain him, frisk him, or search his car" because "he immediately produced a doctor's prescription for marijuana, thus identifying himself as a qualified patient under the [CUA]." (*Strasburg, supra,* 148 Cal.App.4th at p. 1058.) As the court explained, "[t]he fact that defendant had a medical marijuana prescription, and could lawfully possess an amount of marijuana greater than that [the officer] initially found, does not detract from the officer's probable cause. . . . [T]he [CUA] provides a limited immunity — not a shield from reasonable investigation. An officer with probable cause to search is not prevented from doing so by someone presenting a medical marijuana card or a marijuana prescription. Given the probable cause here, the officer is entitled to continue to search and investigate, and determine whether the subject of the investigation is in fact possessing the marijuana for personal medical needs, and is adhering to the eight-ounce limit on possession. Unlawful possession of marijuana remains a criminal offense under . . . section 11350, subject to seriously ill persons using marijuana for medical purposes recommended by a physician . . . not being subject to criminal liability . . . ." (*Id.* at pp. 1059, 1060.)

Appellant claims *Strasburg* is inapposite. According to appellant, when *Strasburg* was decided in 2007, marijuana possession was a misdemeanor and now, possession of less than an ounce of marijuana is a nonjailable offense. Appellant is correct that possession of up to an ounce of marijuana is an infraction, punishable by a fine. (§ 11357, subd. (b).) He seems, however, to misunderstand the automobile exception to the warrant requirement. A "warrantless search of an automobile is permissible so long

7

as the police have probable cause to believe the car contains evidence or *contraband*."
(*Robey, supra,* 56 Cal.4th at p. 1225, italics added, citing *Chambers v. Maroney* (1970)
399 U.S. 42, 48; 4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Illegally Obtained
Evidence, § 266, p. 1083.)

"Both federal and California laws generally prohibit the use, possession
cultivation, transportation and furnishing of marijuana."[4] (*City of Riverside, supra,* 56
Cal.4th at p. 737.) Section 11357, subdivision (b) has reduced the penalty associated
with possession of up to an ounce of marijuana, but "[t]echnically speaking, marijuana
usage is not 'legal' in the State of California." (*In re Drake M.* (2012) 211 Cal.App.4th
754, 769, fn. 10.) Other than certain quantities of medical marijuana, possession of any
amount of marijuana — even an amount within the limit of section 11357, subdivision
(b) — is illegal in California and is therefore "contraband." (Black's Law Dict. (9th ed.
2009) p. 365 [defining contraband as "[g]oods that are unlawful to import, export,
produce, or possess"]; 3 Oxford English Dict. (2d ed. 1989) p. 833 [contraband is
"anything prohibited to be imported or exported; goods imported or exported contrary to
law or proclamation" or something "[f]orbidden, illegitimate, unauthorized"].) Thus, a
law enforcement officer may conduct a warrantless search of a vehicle pursuant to the
automobile exception when the officer has probable cause to believe the vehicle contains
marijuana, which is contraband.

Here, Deputy Griffin had probable cause to believe appellant's truck contained
contraband after smelling burnt marijuana near the truck and seeing burnt marijuana in
the truck, irrespective of whether possession of up to an ounce of marijuana is an
infraction and not an arrestable offense (§ 11357, subd. (b)). Other courts have reached

---

[4]    The "CUA and the MMP 'decriminalize,' for state purposes, specified activities
pertaining to medical marijuana" (*City of Riverside v. Inland Empire Patients Health &
Wellness Center, Inc.* (2013) 56 Cal.4th 729, 754 (*City of Riverside*)) but the CUA does
not "decriminalize marijuana on a wholesale basis." (*People v. Urziceanu* (2005) 132
Cal.App.4th 747, 773; see also *People v. Wayman* (2010) 189 Cal.App.4th 215, 223
["[t]he medical marijuana laws were never intended to be 'a sort of "open Sesame"
regarding the possession, transportation and sale of marijuana in this state' "].)

8

similar conclusions.  (See *State v. Smalley* (Or.App. 2010) 225 P.3d 844, 848 (*Smalley*) [police officer had probable cause to search the defendant's truck pursuant to the automobile exception after smelling marijuana because marijuana is contraband "regardless of its quantity"]; see also *State v. Tovar* (Or.App. 2013) 299 P.3d 580 [following *Smalley*]; *State v. McGrath* (Minn.App. 2005) 706 N.W.2d 532, 544 [rejecting the argument "that small, noncriminal amounts of marijuana cannot establish a fair probability that evidence of a crime or contraband will be found in a particular place"].)[5]

Relying on *Commonwealth v. Cruz* (Mass. 2011) 945 N.E.2d 899 (*Cruz*), appellant urges us to adopt a rule precluding a law enforcement officer from searching a vehicle without a warrant unless: (1) the odor of marijuana suggests the defendant possesses more than 28.5 grams; or (2) the officer observes more than 28.5 grams of marijuana in the vehicle.  In *Cruz*, police officers saw two men sitting inside a car parked in front of a fire hydrant.  (*Id.* at pp. 902-903.)  One officer saw the driver light a type of cigar known to mask the smell of marijuana smoke.  Another officer smelled "a 'faint odor' of burnt marijuana" from the driver's side of the car; the officer "had previously seen the defendant" — the passenger — "smoking a marijuana 'blunt.' " (*Id.* at p. 903.)  Based on the " 'odor of marijuana' " and the nervous way the men were acting, the police officers ordered the men out of the car and searched it.  They discovered crack cocaine on the

---

[5]     The District Court of Maine reached a similar result in *United States v. Pugh* (D.Me. 2002) 223 F.Supp.2d 325, 330 (*Pugh*).  There, the defendant argued the police officer lacked probable cause to search pursuant to the automobile exception "because possession of small amounts of marijuana and the presence of open containers of alcohol . . . are only civil violations under Maine law." (*Id.* at p. 330.)  The *Pugh* court rejected this argument, explaining, "Even in amounts within the Maine statutory limit for a civil violation, marijuana is an unlawful drug.  Under Maine law, marijuana, even in an amount that would only give rise to a civil violation, can be the legitimate object of a search warrant and may be seized and confiscated if found.  [Citation.]  Accordingly, the only question here is whether the marijuana seed and two marijuana roaches — or the cups containing alcohol — provided sufficient cause to justify the search of the trunk." The court concluded there "was probable cause to search the trunk of the defendant's car . . . based on the presence of the marijuana and the surrounding circumstances." (*Id.* at pp. 330, 331.)

defendant.  (*Id.* at pp. 903-904.)  The trial court granted the defendant's motion to suppress.  (*Id.* at p. 902.)

The Massachusetts Supreme Court affirmed the suppression of the cocaine.  It explained, "Although we have held in the past that the odor of marijuana alone provides probable cause to believe criminal activity is underway,[ ] we now reconsider our jurisprudence in light of" the changed "status of the possession of one ounce or less of marijuana from a criminal to a civil offense."  (*Cruz, supra,* 945 N.E.2d at pp. 904-905.)  Despite acknowledging that "possession of marijuana, in any amount, remains illegal" and that "any amount of marijuana is considered contraband," the *Cruz* court held that to search a vehicle pursuant to the motor vehicle exception, the police must have "probable cause to believe that a *criminal* amount of contraband is present in the car," not merely some lesser amount.  (*Id.* at pp. 911-913.)  The court also held that "without at least some other additional fact to bolster a reasonable suspicion of actual *criminal* activity, the odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity to justify an exit order."  (*Id.* at p. 910; see also *Commonwealth v. Daniel* (Mass. 2013) 985 N.E.2d 843 [following *Cruz*].)

*Cruz* does not apply here for at least two reasons.  First, in contrast to Massachusetts, possession of up to an ounce of nonmedical marijuana in California is a "crime."  (Pen. Code, § 16.)  Second, neither the California Supreme Court nor the United States Supreme Court has limited the automobile exception to situations where the defendant possesses a "*criminal* amount of contraband."  As our high court recently stated, the automobile exception applies when "the police have probable cause to believe the car contains evidence or contraband."  (*Robey, supra,* 56 Cal.4th at p. 1225; see also *Maryland v. Dyson* (1999) 527 U.S. 465, citing *Carney, supra,* 471 U.S. 386.)  We are bound by the rulings of our Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), not out-of-state authority (*Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1553).

That appellant possessed a valid 215 card does not vitiate Deputy Griffin's probable cause to search the truck pursuant to the automobile exception.  First, appellant

10

did not tell Deputy Griffin about the 215 card until after Deputy Griffin searched the truck.  Second, the *Strasburg* court considered — and rejected — an identical argument and appellant has not established *Strasburg* was wrongly decided.  (*Strasburg, supra,* 148 Cal.App.4th at p. 1060.)  Under *Strasburg*, the CUA is "not a shield from reasonable investigation.  An officer with probable cause to search is not prevented from doing so by someone presenting a medical marijuana card or a marijuana prescription.  Given the probable cause here, the officer is entitled to continue to search and investigate, and determine whether the subject of the investigation is in fact possessing the marijuana for personal medical needs, and is adhering to the eight-ounce limit on possession."  (*Ibid.*)

That California has decriminalized medicinal marijuana in some situations and has reduced the punishment associated with possession of up to an ounce of marijuana does not bar a law enforcement officer from conducting a search pursuant to the automobile exception.  Here, Deputy Griffin was entitled to investigate to determine whether appellant possessed marijuana for personal medical needs and to determine whether he adhered to the CUA's limits on possession.  "Otherwise, every qualified patient would be free to violate the intent of the medical marijuana program expressed in section 11362.5 and deal marijuana from his car with complete freedom from any reasonable search."  (*Strasburg, supra,* 148 Cal.App.4th at p. 1060.)  Deputy Griffin testified at the preliminary hearing that people often possess more marijuana than allowed under the CUA and "hide" additional quantities of marijuana in their vehicles.  It is well settled that even if a defendant makes only personal use of marijuana found in the passenger compartment of a car, a police officer may reasonably suspect additional quantities of marijuana might be found in the car.  (*Dey, supra,* 84 Cal.App.4th at p. 1322; *Hunter, supra,* 133 Cal.App.4th at p. 382 ["discovery of marijuana in the passenger area of defendant's car" did not foreclose possibility of additional "drugs being found in the trunk" and noting "marijuana is a drug that can be concealed in a variety of containers"].)

Appellant relies on two cases, *Hua, supra,* 158 Cal.App.4th 1027 and *People v. Torres* (2012) 205 Cal.App.4th 989 (*Torres*) to support his argument that "the odor of burnt marijuana and the sight of burnt marijuana in a bowl" cannot support a warrantless

11

search of an automobile.  In *Hua*, police officers approached a noisy apartment and noticed the " 'distinct odor' of burnt marijuana."  They knocked on the door and, while waiting for a response, peered through the open window blinds.  They saw several people inside, one of whom inhaled from what appeared to be a marijuana cigarette, confirming the officers' suspicion that criminal activity was likely under way.  The officers entered the apartment without the defendant's consent and found "growing marijuana plants and a cane sword." (*Hua, supra,* 158 Cal.App.4th at pp. 1030-1031.)  The trial court denied the defendant's suppression motion, concluding there were "exigent circumstances." (*Id.* at p. 1033.)

This court reversed, holding the exigent circumstances doctrine did not justify the officers' warrantless entry into the apartment.  (*Hua, supra,* 158 Cal.App.4th at p. 1033.)  As we explained, "an entry into a home to preserve evidence from imminent destruction is limited to evidence of crimes that are not minor" and "California has chosen to treat the offense of possession of less than 28.5 grams of marijuana as a minor offense that is nonjailable even for repeat offenders . . . .  [O]ne consequence of that decision is to preclude officers who see this offense being committed from entering a home without a warrant or consent to seize the offender or the contraband, in order to prevent the imminent destruction of evidence of the offense." (*Id.* at pp. 1034, 1037.)

*Torres* reached a similar result.  In that case, officers noticed a "strong smell" of marijuana near a hotel room door and entered the room without a warrant. (*Torres, supra,* 205 Cal.App.4th at p. 992.)  Relying on *Hua*, the *Torres* court concluded the officers lacked probable cause to believe destruction of evidence of a jailable offense was imminent.  As the court explained, "police only smelled the odor of burning marijuana.  They had no other information about marijuana possession or any other marijuana-related crime occurring in the hotel room.  No evidence indicated the officers had reason to fear the imminent destruction of evidence of a jailable offense. . . .  [A] belief that evidence of a nonjailable offense will be imminently destroyed is not sufficient to justify a warrantless entry based on exigent circumstances." (*Id.* at p. 995.)

12

Neither *Hua* nor *Torres* assists appellant because those cases concerned warrantless entry into a dwelling and the application of the exigent circumstances doctrine to minor, nonjailable offenses.  "The automobile exception to the warrant requirement does not require a showing of exigent circumstances.  'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits the police to search the vehicle without more.'  [Citation.]" (4 Witkin & Epstein, Cal. Criminal Law, *supra*, § 266, p. 1083 ["[w]arrantless examinations of automobiles may be proper in circumstances in which a search of a home or office would not be" and explaining different rationales for the two types of searches].)

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'  [Citation.]  And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest.  [Citation.]" (*Welsh v. Wisconsin* (1984) 466 U.S. 740, 748.)  The concerns at issue in *Hua* and *Torres* do not exist here, where Deputy Griffin searched a vehicle, not a home.  As our high court recently explained, "[t]he case law on automobile searches . . . reveals that the rationale for allowing a vehicle to be searched without a warrant is rooted in practical concerns unique to automobiles." (*Robey, supra,* 56 Cal.4th at p. 1232.)  Here, Deputy Griffin searched appellant's truck, not his home.  As a result, neither *Hua* nor *Torres* applies here.

We hold a law enforcement officer may search a vehicle pursuant to the automobile exception to the warrant requirement where the officer smells burnt marijuana and sees burnt marijuana in the defendant's car.  The automobile exception is not limited to situations where the officer smells or sees more than 28.5 grams of marijuana in the vehicle (§ 11357, subd. (b)); the observation of any amount of marijuana — which is currently illegal to possess except as authorized by the CUA — establishes probable cause to search pursuant to the automobile exception.  Consistent with *Strasburg, supra,* 148 Cal.App.4th at page 1060, we also conclude the possession of a

13

215 card does not preclude a warrantless automobile search where there is probable cause to believe the vehicle contains contraband or evidence of a crime.

## DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

Superior Court of Del Norte County, No. A137796, William H. Follett, Judge.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, René A. Chacón, Supervising Deputy Attorney General, and Bruce Ortega, Deputy Attorney General, for Plaintiff and Respondent.

1